UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON BROWN #408842,

    Plaintiff,                                      Hon. Janet T. Neff

v.                                                                   Case No. 1:18-cv-986

MATTHEW MACAULEY, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

The Court has before it Defendants' Motion for Summary Judgment (ECF No. 71) and Plaintiff's Motion for Summary Judgment (ECF No. 79). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that both motions be **DENIED**. The undersigned further recommends that the Court dismiss Defendants Unknown Normington and Unknown Party #2 pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

**Background**

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), sued a number of Defendants employed by the MDOC pursuant to 42 U.S.C. § 1983 alleging that they violated his Eighth Amendment rights by failing to protect him from attack by another inmate while he was housed at the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan. Following initial review pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c), the remaining Defendants are Matthew Macauley, a Deputy Warden at IBC; Rufus Wright, a

Resident Unit Manager at IBC; Unknown Normington, an Assistant Resident Unit Supervisor (ARUS) at IBC; and Jane Doe #2, a Psych Department therapist at IBC.

Plaintiff was housed at IBC during 2014. On or about June 20, 2014, inmate Arthur Fort (whom Plaintiff refers to as "Inmate #2") was moved into Plaintiff's two-man cell.[1] That night, Fort told Plaintiff that he was a high ranking member of a race-based, militant, religious organization and a gang banger. Fort told Plaintiff that he needed to share his television with him and give him oral sex, or Fort would make sure Plaintiff was either placed in segregation or transferred. (ECF No. 130 at PageID.947.) The next morning, Plaintiff reported the incident to ARUS Lane, who stated that she would move Plaintiff as soon as possible.

Things got worse the next couple of nights as Fort attempted to coax Plaintiff into giving him oral sex while standing naked on the desk masturbating. Fort continued this same behavior almost every night, telling Plaintiff that he would have Plaintiff stabbed if Plaintiff did not perform oral sex. Plaintiff again complained to Lane, who told Plaintiff that he was bigger than Fort and he should be able to defend himself. Fort began telling Plaintiff that someone had a "hit out" on Plaintiff and that Fort would protect (or had already protected) Plaintiff if Plaintiff performed oral sex. Fort would also sit on the sink while sharpening a knife and threaten to stab Plaintiff unless Plaintiff performed oral sex. (*Id.*) Although Plaintiff continued to complain to Lane, she told Plaintiff she was too busy to move him, and Defendant Wright would have to approve the move.

Fort then began to harass Plaintiff by demanding that Plaintiff either give him oral sex or pay him money. Fort threatened that, if Plaintiff failed to comply, he would allow the inmate with

---

[1] The facts set forth herein are taken from Plaintiff's amended complaint (ECF No. 130) and Plaintiff's affidavit (ECF No. 80), both of which Plaintiff has sworn to pursuant to 28 U.S.C. § 1746. Plaintiff's amended complaint therefore "carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

2

a hit out on Plaintiff to stab Plaintiff. Plaintiff spoke to his friend, Tubbs (whom Plaintiff has referred to in this case as "Inmate #3"), about the situation with Fort. Tubbs told Plaintiff that the only way he could resolve the situation was to "smash Fort's head in" while Fort was sleeping. Tubbs quit speaking to Plaintiff because Plaintiff did not act on his advice. Fort eventually heard about Tubbs's advice to Plaintiff and told Plaintiff that the three of them were going to have a conversation and that one of them would be leaving the compound or both of them would be stabbed. Fort also demanded that Plaintiff pay him $85, or Fort would make sure that Plaintiff got butchered, no matter where he went. Plaintiff told Fort that he did not have enough money and would try to get some later from a friend. (*Id.* at PageID.948–49.)

Fort arranged a meeting between Plaintiff, Tubbs, and himself in the yard. The three met at a picnic table. As they were sitting down, Tubbs struck Plaintiff in the temple, cutting his temple and breaking his glasses. Plaintiff washed the blood off his face and went inside because he was paged to report to base. Shortly thereafter, Corrections Officer Gaskill told Plaintiff that he was moving to a different cell. (*Id.* at PageID.949.)

After Plaintiff moved to his new cell, he was afraid of retaliation by Fort and his friends. By that time, Plaintiff's face had started to swell. Sometime prior to July 10, 2014, Corrections Program Coordinator (CPC) Hull called Plaintiff out to review a grievance Plaintiff had written regarding a legal footlocker.[2] When Hull asked Plaintiff about his black eye, Plaintiff initially said that he slipped when he was moving, but on further questioning, Plaintiff broke down and told Hull the entire story. (*Id.* at PageID.950.)

---

[2] In his complaint and amended complaint, Plaintiff refers to Hull as "Ball." (ECF No. 1 at PageID.12; ECF No. 130 at PageID.950.) Documents in the record show that Plaintiff intended to refer to CPC Hull. (ECF No. 89-1 at PageID.602; ECF No. 109-3.)

The next day, Gaskill told Plaintiff to go speak with Defendant Wright and ARUS Avery about his bruised face and previous kites about Fort's threats to stab, or have someone stab, Plaintiff. During the meeting, Wright told Plaintiff that he was aware of the entire chain of events, and he would have to talk with Defendant Macauley about placing Plaintiff either in segregation or protective custody. Wright told Plaintiff that they had information that Fort's religious organization had become aware of Fort's alleged sexual harassment/advances toward Plaintiff and had ordered Fort to stab Plaintiff to prove that Fort was not a "fag." (*Id.* at PageID.591.) Plaintiff brought up the possibility of a transfer and asked Wright whether he could ensure that Fort and Plaintiff were never again housed in the same facility. Wright told Plaintiff a Special Problem Offender Notice (SPON) regarding Fort could be placed in Plaintiff's file if Plaintiff told them everything and signed a statement verifying what had occurred. Plaintiff completed a written statement and signed it. Wright told Plaintiff that he would be temporarily placed in segregation and transferred within a couple of weeks and that he would make sure that Fort was listed on a SPON in Plaintiff's file. (*Id.*)

About a week later, Plaintiff was seen by the Security Classification Committee, which consisted of Macauley, Defendant Unknown Normington, and Jane Doe #2. During the meeting, Macauley told Plaintiff that he was being transferred to a different facility for his own protection, and that Fort would be noted in Plaintiff's file as a SPON. Defendant Macauley told Plaintiff that due to the size of Fort's organization, he would normally place Plaintiff in long term protective custody but that he was not going to do so because of Defendant Wright's agreement with Plaintiff that he would be transferred with a SPON. Macauley also told Plaintiff that Tubbs should be in Plaintiff's file as a SPON. (*Id.* at PageID.592.)

Soon thereafter, Plaintiff was transferred to the Muskegon Correctional Facility (MCF). Things went well for Plaintiff at MCF until October 15, 2015, when he was stabbed several times from behind while in the yard. Because it was dusk, Plaintiff did not get a good look at his assailant. Plaintiff returned to his cell and noticed that his television was missing and his footlocker and wall locker had been opened. Plaintiff then notified the officers on duty that he needed medical attention. (*Id.* at PageID.953.) A couple of days later, Sgt. Gonzales told Plaintiff that they had recovered his television. Sgt. Gonzales also told Plaintiff that his file did not contain a SPON for Fort, who somehow had been transferred to MCF. A day or two later, while Plaintiff was walking to medical to have his wounds checked, Fort approached Plaintiff and said, "I told you that you couldn't hide from me, and that I would get your bitch ass and all of your shit." Later, that day, Fort saw Plaintiff again and told Plaintiff that he should have just given him a blow job. (*Id.* at PageID.954–55.)

SCC subsequently interviewed Plaintiff, and he was transferred to Lakeland Correctional Facility. Plaintiff was transferred back to IBC in July of 2017. While he was at IBC, Plaintiff spoke with Wright about getting a SPON on Fort placed in his file, as Plaintiff had been promised. Wright told Plaintiff that Macauley was responsible for placing a SPON in a prisoner file and that Wright had nothing to do with it. Wright stated that he shared his thoughts on the matter with Macauley and there was nothing more he could do. (*Id.* at 955–56.)

**Motion Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A dispute is genuine if a reasonable jury could return judgment for the non-moving party.  *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561.  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**Discussion**

Plaintiff alleges that Defendants violated his rights under the Eighth Amendment by failing to protect him from attack by Fort.  A failure-to-protect claim is governed by essentially the same standards as a claim for deliberate indifference to an inmate's serious medical needs.  That is, a plaintiff must establish that the defendant was deliberately indifferent to "a substantial risk" that he might suffer "serious harm."  *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting

6

*Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). A failure-to-protect claim has both an objective and a subjective component. To satisfy the objective component, the plaintiff must show that, absent reasonable precautions, he was exposed to a substantial risk of serious harm. *Farmer*, 511 U.S. at 836. To satisfy the subjective component, the plaintiff must show that the defendant acted with deliberate indifference, that is, the plaintiff must demonstrate that the defendant was "subjectively aware of the risk," but failed "to take reasonable measures to abate it." *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847). Specifically, the plaintiff must demonstrate that: (1) the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if reasonable measures were not taken; (2) the defendant actually drew the inference; and (3) the defendant disregarded that risk. *Id.* at 837. To prevail on the specific claim that a defendant failed to protect him from an assault by another inmate, the plaintiff must establish: (1) the defendant had reason to believe another inmate would assault plaintiff; and (2) the defendant had both the opportunity and means to prevent the assault. *See, e.g., Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013).

### I.     Plaintiff's Motion

Plaintiff argues in his motion that he is entitled to summary judgment because Defendants cannot dispute any fact that supports Plaintiff's claim. While some facts are not in dispute, for example, that Plaintiff was housed at IBC in a cell with Fort during July 2014, had been in a fight with another inmate and had a visible injury, and had informed Wright and Hull that an inmate had threatened to stab him, genuine disputes of material fact remain. Importantly, Wright states that he was unaware that Fort had sexually harassed Plaintiff and had not been informed that Fort had threatened to stab Plaintiff because Fort's religious organization learned about Plaintiff's reports that Fort had sexually harassed him. (ECF No. 72-5 at PageID.385.) Wright also denies

discussing a SPON with Plaintiff. (*Id.* at PageID.386.) Similarly, Macauley denies discussing the issue of a SPON for Fort with Plaintiff or telling Plaintiff that he belonged in long-term protection but that Macauley would not place Plaintiff there because of Plaintiff's agreement with Wright. (ECF No. 72-4 at PageID.374–75.) Accordingly, Plaintiff has not shown "that the evidence [supporting his claim] is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

## II.     Defendants' Motion

Defendants argue that they are entitled to summary judgment because Plaintiff cannot show that Defendants consciously failed to take steps to protect Plaintiff from a serious risk of harm. Defendants focus solely on the subjective component of Plaintiff's claim. As for the objective component, Plaintiff has presented sufficient evidence to show that he was exposed to a substantial risk of serious harm. According to Plaintiff's verified allegations, Fort had threatened to stab Plaintiff because Fort's militant religious organization had learned of Plaintiff's allegations that Fort sexually harassed Plaintiff. This evidence satisfies the objective component. *See Madden v. Grate*, No. 5:19-CV-73, 2020 WL 95138, at *4 (W.D. Ky. Jan. 8, 2020) ("Even if an inmate cannot specifically identify the inmate responsible for the threat or is less than forthcoming with prison officials, a threat of bodily harm is sufficiently serious to satisfy the objective component of a deliberate indifference claim.").

As for the subjective component, Defendants' argument that they were not deliberately indifferent rests principally upon their statements in their own affidavits. But the facts set forth above, taken from Plaintiff's verified pleadings, suffice to create a genuine issue of material fact as whether Defendants recklessly disregarded a risk of harm. Defendants' assertion that "Plaintiff cannot simply rest on his pleadings" (ECF No. 72 at PageID.359), ignores the legal effect of

8

Plaintiff's verification.  While it is true, as Defendants note, that Defendants took some action to abate the risk of harm by transferring Plaintiff, a trier of fact could conclude that a transfer to a different facility would have been reasonable only if Defendants had entered a SPON on Fort in Plaintiff's file—as Plaintiff alleges they promised to do—to prevent any future possibility of Fort being housed in the same facility with Plaintiff.  Finally, *Marsh v. Arn*, 937 F.2d 1056 (6th Cir. 1991), which Defendants cite as analogous to the instant case, is apt only if the Court accepts Defendants' version of the facts.  The court in *Arn* held that the evidence was insufficient to support the jury's verdicts against Defendants because the evidence showed only that the defendants were aware of the assailant's history of violence and the plaintiff's desire to move, but lacked actual knowledge of a "specific" threat of injury to the plaintiff.  *Id.* at 1061.  If Plaintiff's version is credited, as is required on summary judgment, Defendants were aware of a specific threat of injury by Fort and *Marsh* is inapplicable.[3]

Defendants further argue that they are entitled to qualified immunity on Plaintiff's claims.  The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999).  An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  "Qualified immunity balances two important interests—the need to hold

---

[3] Defendants also fail to note that in *Street v. Corrections Corporation of America*, 102 F.3d 810, 815 (6th Cir. 1996), the Sixth Circuit said that "[t]o the extent that *Marsh* required a showing of 'specific risk,' it is inconsistent with *Farmer*," thus rendering *Marsh*'s continuing validity questionable.

public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236. As discussed above, an issue of fact remains as to whether Defendants were deliberately indifferent to a serious risk of harm to Plaintiff. Under *Farmer*, it is clearly established that prison officials violate the Eighth Amendment when they are deliberately indifferent to a threat of violence by one inmate against another. *See Bishop v. Hackel*, 636 F.3d 757, 765–66 (6th Cir. 2011). Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's claims.

### III. Unserved Defendants

As noted above, Plaintiff has also sued Defendants Unknown Normington and Unknown Party #2, both of whom are still unserved. Plaintiff's only allegations against these individuals is that they were members of the Security Classification Committee that met with Plaintiff. Although Plaintiff alleges that "[t]he entire SCC panel agreed that Fort was a long term threat and that they needed to put him in my file as a SPON" (ECF No. 130 at PageID.952), Plaintiff is specific about who on the Security Classification Committee agreed to put the SPON in Plaintiff's file: "Macaley [sic] told me that . . . he would ensure that Fort was placed in my file with a SPON so that he would never be at the same facility again." (*Id.*) Plaintiff does not allege that

Unknown Normington and Unknown Party #2 undertook to place a SPON on Fort in Plaintiff's file. Thus, Plaintiff has not alleged facts that show that the unserved defendants were deliberately indifferent to a serious risk to Plaintiff's safety if Macauley said that he would handle the matter but failed to do so.

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), a court "shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." *See Bright v. Thompson*, 467 F. App'x 462, 464 (6th Cir. 2012) (noting that Section 1915(e)(2)(B) authorizes district courts to sua sponte dismiss prisoner complaints that fail to state a claim and that "[s]uch dismissal may occur at any time"). Based on Plaintiff's allegations, the undersigned recommends that the Court conclude that Plaintiff fails to state a failure-to-protect claim against Defendants Unknown Normington and Unknown Party #2 because Plaintiff has not pled facts that establish that the unserved parties knew that Defendant Macauley did not place a SPON in Plaintiff's file and thus did not disregard a known risk of harm to Plaintiff. *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847).

## Conclusion

For the reasons set forth above, I recommend that the Court **deny** both Defendants' Motion for Summary Judgment (ECF No. 71) and Plaintiff's Motion for Summary Judgment (ECF No. 79). I further recommend that the Court dismiss Defendants Unknown Normington and Unknown Party #2 pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

I further recommend that an appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

11

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Dated: February 27, 2020                                          /s/ Sally J. Berens
                                                                                       SALLY J. BERENS
                                                                                       U.S. Magistrate Judge