UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JASON BROWN #408842,

    Plaintiff,

v

MATTHEW MACAULEY and RUFUS WRIGHT,

    Defendants.

NO. 1:18-cv-986

HON. JANET T. NEFF

MAG. ELLEN S. CARMODY

---

Gregory N. Longworth (P49249)
Clark Hill PLC
Attorneys for Plaintiff
200 Ottawa Avenue NW, Suite 500
Grand Rapids, MI 49503
616-608-110
glongworth@clarkhill.com

Sara Trudgeon (P81255)
Assistant Attorney General
Attorney for MDOC Defendants
Michigan Department of Attorney General
MDOC Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055
trudgeons@michigan.gov

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SPOLIATION SANCTION AND ADVERSE PRESUMPTION INSTRUCTION**

Defendants RUM Wright and Warden Macauley, through counsel, respond in opposition to Plaintiff's motion for spoliation sanction and adverse presumption instruction.  (R. 159; R. 160.)  For the reasons explained below, Defendants ask this court to deny Plaintiff's motion.

## Statement of Facts

Defendants provided a detailed statement of facts of this case in their recently filed motion for summary judgment.  In addition to those facts, the following specifically addresses the facts surrounding Plaintiff's motion.

Brown alleges RUM Wright took notes during his conversation with Brown on July 10, 2014, and Brown added to and signed those notes. (R. 130, PageID.951, ¶60.) Brown further alleges that those notes should have been attached to the CSJ-686 that was created that same day. (R. 160, PageID.1091.) Finally, Brown alleges that Defendants, at least negligently, destroyed these notes that he asserts should have been preserved in anticipation of litigation. (R. 160, PageID.1094.) Despite these allegations, there is no evidence beyond Brown's belief that notes signed by Brown should have been attached, that such a document even existed, much less that it was willfully or negligently destroyed.

Brown is not a reliable information source. For example, Brown exaggerates dates in his complaint, stating that Fort harassed him for "more than [two] weeks" while they shared a cell, and it took "more than [two] weeks to move him to a different cell." (R. 130, PageID.948, ¶¶14-18.) In reality, Brown and Fort only shared a cell for six days. (R. 163-2, PageID.1148; R. 163-3, PageID.1150.) Also, Brown claims he was in temporary segregation for "a week or so" before he was interviewed by the security classification committee. (R. 130, PageID.952, ¶69.) However, he spoke to CPC Hull and RUM Wright on July 10, 2014, and he was placed in temporary segregation for his safety that same day. (R.163-5, Hull Dep., PageID.1164, 13:16-13:23; R. 163-8, Wright Dep., PageID.1180, 58:24-59:17; R. 163-2, PageID.1148.) He was then interviewed by the SCC the next day, July 11, 2014. (R. 163-11, Macauley Dep., PageID.1227, 30:11-15.)

Additionally, in his recent motion, Brown states "out of embarrassment, Brown did not tell Hull about Fort's sexual misconduct." However, in his complaint, he states that he "told her the entire story" including "Fort pressing [him] for oral sex every night." (R. 130, PageID.950, ¶49.) Also, Brown testified that he "broke down and told [Hull] what had been going on for the last week and a half in the cell." (R. 163-4, Brown Dep., PageID.1154, 16:23-25.) Hull, who is not a party to the present lawsuit, remembers this incident well because it was an unusual event in her position as a corrections program coordinator. (Ex A, Hull Dep., 42:18-43:7.) She testifies, that Brown did not tell her anything about his cellmate threatening him in a sexual manner. (R. 160-1, Hull Dep., PageID.1105, 39:13-15.) There is no such documentation of threats that were sexual in manner in Hull's memorandum or on the CSJ-686. (R. 163-6, PageID.1169; R. 163-7, PageID1171.)

Defendants RUM Wright and Warden Macauley as well as the other persons deposed in this case, former CPC Hull and former ARUS Normington, deny that Brown complained about his cellmate threatening him in a sexual manner. (R. 163-8, Wright Dep., PageID.1177, 31:8-32:17; R. 163-12, PageID.1237; R. 160-1, Hull Dep., PageID.1105, 39:13-15; Ex C, Normington Dep., 15:24-16:19.) RUM Wright also denies promising Brown a SPON would be placed in his file and denies that a SPON was warranted in this situation. (70:2-15, 71:15-73:15.) Macauley also denied that a SPON was warranted in this case. (R. 163, PageID.1133, 1140-42.) Macauley further states that a PREA investigation would have been initiated if Brown had made such complaints. (Ex B, Macauley Dep., 79:16-84:25.)

3

Further still, Wright denies that he would ever attach his hand-written notes to a CSJ-686 nor would he show a prisoner his personal notes. (Ex D, Wright Dep., 80:3-9.) Wright does admit that sometimes he has a prisoner write out his own statement and sign it but does not believe that he did that in this case since he determined he was going to send Brown to temporary segregation. (R.163-8, Wright Dep, PageID.1181, 63:24-64:25.)

RUM Wright interviewed Brown July 10, 2014. (*Id*., PageID.1180, 58:24-59:8.) Warden Macauley met with Brown on July 11, 2014, regarding the CSJ-686 protection request as part of the security classification committee. (R.163-11, Macauley Dep., PageID.1227, 30:11-15.) Brown transferred to Muskegon Correctional Facility on July 17, 2014. (R. 163-2, PageID.1148.) Over a year later, on October 16, 2015, Brown was assaulted by an unknown assailant. (R. 163-4, Brown Dep., PageID.1156, 25:14-19.) Brown was transferred to Lakeland Correctional Facility on October 29, 2015. (R. 163-2, PageID.1148.) Brown wrote a grievance regarding a SPON not being placed in his file against Fort on November 15, 2015. (R. 163-9, PageID.1206.) Brown filed the present lawsuit on August 31, 2018. (R. 1.)

## Legal Standard

Spoliation sanctions are governed by federal law during litigation in federal courts. *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc) (*Adkins II*). District courts have broad discretion to craft proper sanctions for the spoliation of evidence. *Id*.

4

The Sixth Circuit follows the following standard, crafted in *Beaven v. United States Dep't of Justice*, to determine whether a particular spoliation sanction is appropriate. 622 F.3d 540, 553-54 (6th Cir. 2012).

> A party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. Thus, an adverse inference for evidence spoliation is appropriate if the Defendants knew the evidence was relevant to some issue at trial and their culpable conduct resulted in its loss or destruction. This depends on the alleged spoliator's mental state regarding any obligation to preserve evidence and the subsequent destruction.

*Id.* (quotation marks and citations omitted). Furthermore, "[a]n obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation, but, if there was no notice of pending litigation, the destruction of evidence does not point to consciousness of a weak case and intentional destruction." *Id.*, at 553. The court must "consider incidences raising spoliation questions on a case-by-case basis, considering the purposes of a spoliation sanction and the factors for determining whether one should be imposed." *Adkins v. Wolever*, 692 F.3d 499, 506 (6th Cir. 2012) (*Adkins III*).

This standard, however, is predicated on the assumption that the evidence in question actually existed to be preserved.

## Argument

**I. The evidence contradicts Brown's position and request for a spoliation sanction.**

Brown alleges that there are handwritten documents from RUM Wright and himself that were at one point attached to the CSJ-686. Specifically, Brown alleges that these documents included statements regarding sexual misconduct and that he identified his cellmate, Fort, by name. (R.160, PageID.1097.) However, beyond Brown's statements, there is no evidence that such evidence exists.

As demonstrated through the testimony of Defendants RUM Wright and Warden Macauley as well as non-parties Ms. Hull and Ms. Normington, there is a question as to whether there was an attachment to the CSJ-686. Despite Plaintiff's claims, Ms. Hull did not testify that RUM Wright told her he would be attaching Brown's written statement to the CSJ-686. (R. 160, PageID.1091.) Instead, Hull testified that she knew RUM Wright had spoken to Brown and Hull "assumed [RUM Wright] either had additional information or different information." (R. 160-1, PageID.1104, 37:12-21.) However, Hull does not know what happened with the form after she completed it. (*Id.*, at 37:19-38:3.) Hull wrote "attached" on the form not knowing if any additional information would be attached. (*Id.*, at 38:7-21; Ex A, Hull Dep., 44:13-21.)

Included as Exhibit E is a color copy of the original CSJ-686. As noted at the bottom of the form, the original would be placed in the prisoner's record office file, and a carbon copy would be distributed to the counselor file and to the prisoner. (Ex D.) Brown does not recall if he received his copy of the CSJ-686, but neither the

copy in the record office file nor the counselor file included an attachment.  (R.163-4, Brown Dep., PageID.1156, 22:17-22.)  The form does not have any markings that indicate anything was stapled or paperclipped to it.  (Ex B.)

In short, the evidence simply does not support Brown's contention.  The testimony of the MDOC officials clearly outweighs Brown's claims.  While this testimony is record evidence, if the Court finds a question remains as to the existence of the note, due to the conflicting testimony, an evidentiary hearing is required to determine whether an attachment to the CSJ-686 was ever created and attached to the form.

## II.     Plaintiff fails to prove the elements of spoliation.

In seeking an adverse inference instruction based on spoliation of evidence, Brown must establish each the following elements have been met:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed;
> (2) that the records were destroyed with a culpable state of mind; *and*
> (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven*, 622 F.3d at 553-54 (emphasis added).

### a. Neither RUM Wright nor Warden Macauley had an obligation to preserve the alleged evidence at the time it was allegedly destroyed.

"An obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation, but, if there was no notice of pending litigation, the destruction of evidence does not point to consciousness of a weak case and intentional destruction."  *Id.*, at 554.

If RUM Wrights notes and Brown's alleged written statement had been attached to the CSJ-686 as Brown claims, neither RUM Wright nor Warden Macauley had an obligation to preserve the alleged evidence at the time it was allegedly destroyed.

As to RUM Wright's notes, RUM Wright testifies that he would have used a yellow legal pad to take notes during the interview, not a computer. (Ex D, Wright Aff., 47:2-12; R. 163-8, Wright Aff., PageID.1181, 62:20-24.) RUM Wright also testifies that that he may give a prisoner a pad of paper to write a statement down, but he would not give a prisoner his notes to sign nor would he attach his own hand-written notes to an NOI (the CSJ-686 in this case). (Ex D, Wright Aff., 80:3-9.) In fact, RUM Wright denies showing his notes to Brown and asking him to sign because RUM Wright "knew [he] was going to send [Brown] to temporary segregation" and thus there was no need for additional support because Brown would be protected. (R. 163-8, Wright Aff., PageID.1181, 64:15-25.) RUM Wright further denies preparing a report and attaching it to the CSJ-686. (*Id.*, at 65:1-5.) An attachment is not necessary if the CSJ-686 includes the necessary information that states what the prisoner claims happened. (*Id.*, at 65:23-66:5.) RUM Wright had Brown placed in temporary Segregation to ensure his protection and had no reason to believe that this interaction would result in litigation.

As to any signed statement from Brown, this allegation also fails for lack of evidence. After the interview, the form would have been distributed as noted on the bottom of the form. (Ex E.) The original copy would be placed in Brown's record

8

office file, which is kept in the records office at the facility that is outside of the secured area in an administration building, and carbon copies would go to the counselor file, which is kept in the ARUS's office, and to the prisoner. (R. 163-11, Macauley Dep., PageID.1227, 31:5-19.) Macauley testifies that he would give the completed form to a clerical support person, who would likely copy any attachments and make sure the form is properly distributed. (*Id.*, at 31:22-32:13.) Once the form is distributed to each of these places — the records office, the counselor file, and the prisoner — the form would be outside of RUM Wright and Warden Macauley's control. (*Id.*, at 31:22-32:25.)

The Sixth Circuit has refused to impose a burden on MDOC requiring its employees to take "affirmative steps to ensure that their employing prison continues to maintain evidentiary records for every incident with a prisoner." *Adkins v. Wolever*, 692 F.3d 499, 506 (6th Cir. 2012) (*Adkins III*). Thus, RUM Wright and Warden Macauley believed the issue to be resolved as they placed Brown in temporary segregation and had him transferred, respectively. Brown did not file a grievance on the issue until over a year later and did not file the present lawsuit until over four years after the events with RUM Wright and Warden Macauley took place. (R. 163-9, PageID.1206; R. 1.) Thus, suggesting that they had a duty to preserve this particular document is outside the requirements of the law.

### b. The evidence, if it existed, was not destroyed with a culpable state of mind.

A party can establish that that evidence was destroyed with a culpable state of mind "by a showing that the evidence was destroyed knowingly, even if without

9

intent to breach a duty to preserve it, or negligently." *Beavens*, 622 F.3d 554 (internal citations omitted). If the party does not have control or access over the evidence, there is no basis to assert "any culpability for the lost items." *Adkins III*, 692 F.3d at 505 (internal quotations omitted).

RUM Wright did not have a culpable state of mind in destroying his hand-written notes. In addition to what is stated above, RUM Wright testifies that he eventually shreds his notes and that it is likely he did so in this case because the event "was a long time ago, [and he's] moved a couple offices since then." (Ex D, Wright Dep., 66:16-67:3.) His practice of shredding his personal notes does not point to a culpable state of mind. In the end, the notes would have been used to prepare a report but, in this case, RUM Wright did not take such action because he was satisfied with the details on the CSJ-686. (*Id.*, at 65:23-66:5.)

To the extent Brown alleges that RUM Wright's notes and Brown's signed statement was destroyed after the SCC meeting, this argument fails as well. As noted above, the form and any attachments would have been distributed to the record office, counselor file, and to Brown. (R. 163-11, Macauley Dep., PageID.1227, 31:5-19.) Each of these places is outside of the control of RUM Wright and Warden Macauley.

Brown also alleges that the notes and signed statement went missing between the time Brown filed a grievance and when he filed this lawsuit. (R. 160, PageID.1094.) It is unclear how that has been deduced as the CSJ-686 does not appear in the Step III grievance report or the AIM investigation (Internal Affairs),

both of which are housed at central office in Lansing, Michigan. (R.163-9, PageID.1183; Ex F, Step III Grievance Packet.) Had these documents been included in either the Step III grievance packet or the AIM investigation, they would not have been under the control of RUM Wright or Warden Macauley.

### c. The evidence is not relevant to the legal claims and defenses asserted in this case.

As fully explained in Defendants' motion for summary judgment, this allegedly spoiled evidence is not relevant to the legal claims or defenses in this case. (R. 163.) In order for Plaintiff to prevail on a claim under 42 U.S.C. § 1983, Plaintiff must prove Defendants are liable under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Under the Eighth Amendment, prison officials "must protect prisoners from violence at the hands of other prisoners. However, a constitutional violation occurs only where the risk alleged is, objectively, 'sufficiently serious,' and the official has acted with 'deliberate indifference' to inmate health or safety." *Id.* at 825-26 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (2001)). Further, a prison official may also be "free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.*, at 842. Thus, the question is not what "could have been done differently, but whether [the defendant's] response was *reasonable*." *Mangum v. Repp*, 674 F. App'x 531, 540 (6th Cir. 2017) (emphasis in original) (citing *Farmer*, 511 U.S. at 844).

Brown indicates that the evidence would show that he specifically identified Fort and made allegations of sexual misconduct, which supports his belief that a SPON should have been issued. (R.160, PageID.1097.) However, Macauley testifies

11

extensively that not every disagreement, fight, or threat between prisoners warrants a SPON. (R. 163, PageID.1133, 1140-42; R. 163-11, Macauley Dep., PageID.1228-30.)

Even if the evidence that Brown claims was destroyed in fact existed and was available, it would not change the fact that neither RUM Wright nor Warden Macauley thought a SPON was warranted in this case but did take action to secure Brown. RUM Wright indisputably took action to protect Brown by placing him in temporary segregation the same day he learned that Brown's safety may be at risk. Warden Macauley indisputably took action to protect Brown by placing him back into temporary segregation until he could be transferred to a different facility following the SC hearing. Thus, their reasonable action with or without the alleged notes establish they were not deliberately indifferent to any serious risk of safety to Brown.

## **RELIEF**

For the reasons fully explained above Defendants RUM Wright and Warden Macauley respectfully ask this Honorable Court to deny Plaintiff's motion.

    Dana Nessel
    Attorney General

    */s/ Sara Trudgeon*
    Sara Trudgeon
    Assistant Attorney General
    Attorney for Defendants
    Michigan Dep't of Attorney General
    MDOC Division
    P.O. Box 30217
    Lansing, MI 48909

12

|  |  |
|---|---|
|  | (517) 335-3055 |
|  | trudgeons@michigan.gov |
| Dated: June 18, 2021 | P82155 |

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such.

*s/ Terri J. Davis*
Terri J. Davis
Legal Secretary